[Doc. No. 23]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| NICHOLAS RECCHIA,<br><br>        Plaintiff,<br><br>   v.<br><br>KELLOGG COMPANY,<br><br>        Defendant. | Civil No. 10-4899-JEI-KMW |

**OPINION**

**WILLIAMS**, United States Magistrate Judge:

    THIS MATTER is before the Court on the Motion of Defendant, Kellogg Company, seeking to compel the deposition of Plaintiff Nicholas Recchia's attorney, Jacqueline Vigilante, Esquire. Plaintiff opposes this Motion. The Court has considered the submissions of the parties pursuant to Federal Rule of Civil Procedure 78, and for the reasons set forth herein, the Motion is **DENIED**.

**BACKGROUND**[1]

    In this employment action, Plaintiff alleges, *inter alia*, that he was terminated on account of his age and disability. (*See* Compl., Doc. No. 1.) Plaintiff was employed with Defendant as a warehouse supervisor for about 28 years and alleges that in March

---

[1] The Court recites only the facts necessary for disposition of this Motion.

1

2009 he took an approved leave of absence after being diagnosed with alcoholism. (*Id.* at ¶¶ 10-11, 19.) However, while on leave, Plaintiff was diagnosed with cancer so his leave of absence, set to expire on June 7, 2009, was extended for an additional six to eight weeks. (*Id.* at ¶ 20.) Plaintiff alleges that he was approved to return to work on September 1, 2009, however, Plaintiff was advised that he was laid off as part of a reduction in force due to his position being eliminated. (*Id.* at ¶¶ 22-23, 29.) Plaintiff was offered the opportunity to apply for other positions but Plaintiff alleges that all available positions were filled by younger, less qualified individuals. (*Id.* at ¶¶ 26-28.) Similarly, Plaintiff alleges that his position was not in fact eliminated but was filled by a co-worker with less experience. (*Id.* at ¶¶ 29-30.)

Defendant provided Plaintiff with a written Employee Separation Packet which contained, among other things, a separation agreement and general release for which he had forty-five (45) days to consider.[2] (*Id.* at ¶ 37, 46.) Because Plaintiff was identified as an eligible employee pursuant to Defendant's severance plan, Plaintiff was placed on a 26 week severance leave of absence on the effective date of his layoff, September 1, 2009. (*Id.* at ¶¶ 39-45.) During the 26 week period, Plaintiff was entitled to severance pay and continued participation in the employer sponsored

---

[2] Plaintiff's consideration period was extended because he appealed his pension calculation to the ERISA committee. (*Id.* at ¶ 51.)

health, dental and life insurance plans. (*Id.* at ¶ 43.) Plaintiff claims that the "benefits were to continue uninterrupted pending the deadline for the employee to submit the un-revoked release." (*Id.* at ¶ 44.)

On October 6, 2009, Plaintiff consulted with Jacqueline Vigilante, Esquire, ("Plaintiff's counsel") with regard to the separation agreement and general release. (*Id.* at ¶ 49.) On October 7, 2009, Plaintiff's counsel communicated with Defendant via letter regarding the separation agreement and general release as well as concerns that Plaintiff was the victim of unlawful discrimination. (*Id.* at ¶ 50.) In that letter, Plaintiff's counsel requested additional severance benefits on behalf of Plaintiff. (*See* Defendant's Motion to Compel Discovery ("Def.'s Mot."), Exh. C, Doc. No. 23-7.) Plaintiff claims that Defendant terminated all severance pay and benefits continuation and the reason provided for the cessation of benefits was Plaintiff's retention of a lawyer. (Compl. ¶¶ 52-53.) Defendant does not appear to dispute suspending Plaintiff's severance benefits but claims it did so because it received, what it terms, a counter offer. (Defendant's Brief in Support of Motion to Compel Discovery (Def.'s Br.") 3, Doc. No. 23-1.) Plaintiff claims that Defendant told him that if he signed the separation agreement and general release, his pay and insurance would be reinstated. (Compl. ¶ 54.) Plaintiff claims that he relied on the pay and insurance to support

3

his family, thus, he felt undue pressure to sign the agreement. (*Id.* at ¶ 55.)  In fact, Plaintiff claims that his dependent son was hospitalized in a treatment facility at the time the benefits were terminated and he was instructed to pick his son up due to the lack of insurance.  (*Id.* at ¶ 56-58.)  Plaintiff claims that based upon the duress placed upon him by the cessation of his benefits, he signed and returned the separation agreement and release.  (*Id.* at ¶ 59-60.)

On April 25, 2012, the Honorable Joseph E. Irenas, S.U.S.D.J., entered an Order denying a Motion to Dismiss filed by Defendant. (April 25, 2011 Order, Doc. No. 11.)  In its Motion, Defendant claimed that the separation agreement and general release signed by Plaintiff bars the present litigation. (April 25, 2011 Order ¶ 4). However, Judge Irenas found that Plaintiff had adequately plead facts to establish that the severance agreement and general release was entered into under duress in that Plaintiff alleged that Defendant promised to pay health benefits and terminated the benefits without cause while Plaintiff's dependent son was hospitalized and, thus, in need of the benefits.  (*Id.* at ¶ 6.) Therefore, Judge Irenas denied the Motion to Dismiss.  (*Id.*)

Currently before the Court is Defendant's Motion seeking to compel the deposition of Plaintiff's counsel.  (*See* Def.'s Mot., Doc. No. 23.)  Defendant wants to depose Plaintiff's counsel regarding conversations with Plaintiff concerning the release which

4

he now claims was signed under duress. (*Id.*) Specifically, in its brief, Defendant argues, relying on *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578,* 130 F.R.D. 348 (D.N.J. 1990), that there is no general prohibition against obtaining the deposition of adverse counsel and that Plaintiff cannot show there would be undue burden or oppression to preclude said deposition. (Def.'s Br. 7-8.) Moreover, Defendant argues that it is entitled to question Plaintiff's attorney with regard to privileged conversations held with Plaintiff because Plaintiff has impliedly waived the attorney-client privilege. (Def.'s Br. 8, Doc. No. 23-1.) In this regard, Defendant argues that Plaintiff put his communications with his attorney at issue by claiming he signed the release agreement under duress. (Def.'s Br. 8-10.)

In Plaintiff's Brief in Opposition to Defendant's Motion to Compel Discovery (Pl.'s Br.), Plaintiff posits several arguments against permitting the deposition of Plaintiff's attorney. (Pl.'s Br., Doc. No. 30.) Plaintiff argues that he was entitled to consult an attorney regarding the release agreement pursuant to the Older Workers Benefits Protection Act, thus, Defendant's attempt to now intrude upon those privileged communications would obliterate the protections afforded by the law. (Pl.'s Br. 7-9.) Second, Plaintiff argues that the issue before the Court is whether he voluntarily signed the release agreement. (*Id.* 9-10.) In this regard, Plaintiff contends that he did not sign the release

5

agreement voluntarily because he was under duress due to the fact that Defendant suspended his pay and benefits. (*Id.*) Therefore, Plaintiff argues, that any conversations he had with his attorney will not shed light on the voluntariness of the release especially since it is Defendant's action which caused the duress. (*Id.*) Similarly, Plaintiff argues that he has not put his communications with his attorney at issue for the same reasons and contends that many of the cases cited by Defendant are non-precedential and distinguishable from the issue presented here. (*Id.* 10-13.) Furthermore, Plaintiff argues that the deposition of his attorney would result in undue burden or oppression because the information sought will not lead to the discovery of admissible evidence, is available from other, less intrusive sources, and will harm Plaintiff's representational rights. (*Id.* 13-18.)

In Defendant's Reply Brief In Support of Motion to Compel Discovery (Def.'s Reply Br.), Defendant argues, relying on *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515 (3d Cir. 1996), that the absence of a knowing waiver or the absence of a voluntary waiver both justify piercing the attorney-client privilege. (Def.'s Reply Br. 5., Doc. No. 32.) Further, Defendant argues that while Plaintiff attempts to only focus on the fact that his decision to sign the release was involuntary, Defendant points to one paragraph in Plaintiff's Complaint where he plead that his decision to the sign the agreement was not knowing. (*Id.* 6.)

6

Thus, Defendant claims that Plaintiff's assertion that the release was not knowing and voluntary amounts to a waiver of the attorney-client privilege.  (*Id.* 6-7.)

**DISCUSSION**

"The Federal Rules of Civil Procedure adopt a liberal policy for providing discovery." Jones v. DeRosa, 238 F.R.D. 157, 163 (D.N.J. 2006).  Federal Rule of Civil Procedure 26(b)(1) provides in pertinent part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  The phrase "relevant to the subject matter involved in the pending action" is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in

the case. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)(citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

By way of motion, a party may seek an order compelling discovery not otherwise provided. Fed. R. Civ. P. 37(a). "There is no general prohibition against obtaining the deposition of adverse counsel regarding relevant, non-privileged information." *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990). In considering a motion to compel the deposition of adverse counsel, the Court weighs the request to depose counsel in accordance with the balancing test set forth in *Johnston.* Thus, where a party seeks to block its attorney's deposition concerning relevant information, the motion's success will hinge upon the party's ability to establish an "undue burden" or "oppression" measured by:

> (1) the relative quality of information in the attorney's knowledge, that is, whether the deposition would be disproportional to the discovering party's needs; (2) the availability of the information from other sources that are less intrusive into the adversarial process; and (3) the harm to the party's representational rights of its attorney if called upon to give deposition testimony.

*Johnston*, 130 F.R.D. at 353. In *Johnston*, caution was advised where the deposition of counsel would be heavily intertwined with privileged or confidential information. *Id.* at 352. Therefore, it follows that where, as here, the deposition sought explicitly seeks privileged information, the Court shall cautiously employ the aforementioned factors.

**1. PROPORTIONALITY**

First, the Court will consider the proportionality prong of the *Johnston* test. In this regard, the information sought must "concern relevant information that is within the inquiring party's legitimate discovery needs" when assessed against the nature and complexity of the lawsuit, the importance of the issues at stake in the lawsuit and the significance of the substantive issues. *Id.* at 353 (citing Notes of the Advisory Committee, Rule 26(b)(1983 Amendment)). A deposition sought on central factual issues, as opposed to peripheral concerns, would weigh more heavily for the proportionality of the discovery sought. *Id.*

In this case, Plaintiff asserts various claims for employment discrimination pursuant to, *inter alia*, the Age Discrimination in Employment Act ("ADEA") and the Older Workers Benefit Protection Act ("OWBPA"). However, a barrier to asserting those claims and a significant issue in this case is whether the release agreement signed by Plaintiff upon his separation from employment is enforceable. Plaintiff claims that the release of his claims was

9

not voluntary as he was under duress because Defendant suspended his pay and health benefits during his consideration of the release agreement based upon the fact that he hired an attorney.[3]  Indeed, Plaintiff claims that he needed his medical benefits because his son was hospitalized and the facility was requiring that Plaintiff either pay for the continued care or his son would be discharged. Thus, despite consulting with an attorney, Plaintiff signed the release he now challenges in this action.  Accordingly, Defendant seeks to depose Plaintiff's counsel for the express purpose of questioning her as to the conversations she had with Plaintiff with regard to the release agreement.

The OWBPA establishes minimum statutory requirements for the knowing and voluntary release of an ADEA claim, some of those factors relevant to this case are: 1) right to seek counsel; 2) 45 day consideration period; 3) seven (7) day revocation period; 4) provision of detailed information about those affected by group termination; 5) waivers be in writing; 6) waiver must specifically refer to ADEA.  *Long v. Sears Roebuck & Company*, 105 F.3d 1529, 1539 (3d Cir. 1997).   When it is established that the minimum

---

[3] Defendant argues that Plaintiff is "backing away" from the knowing aspect, trying only to focus on whether Plaintiff signed the release agreement voluntarily.  In this regard, Defendant cites one paragraph in Plaintiff's Complaint which references that Plaintiff's release was not knowing and voluntary.  First and foremost, complaints often contain formulaic references to the law and, here, the OWBPA requires releases be made both knowingly and voluntarily. Second, the Court does not view the use of the word "knowing" once in the Complaint at odds with the arguments posed by Plaintiff in his papers because the issue in this case appears to be the voluntariness of Plaintiff's actions based upon alleged duress.  However, if there is a true issue in this regard maybe an amendment to the pleadings should be considered.

statutory requirements are met, courts may, in addition, consider non-statutory circumstances such as fraud, duress or coercion in determining whether a waiver is knowing and voluntary. *See Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 295 n.8 (3d Cir. 2003); *see also Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1229 (10th Cir. 1999); *Griffin v. Kraft General Foods, Inc.*, 62 F.3d 368, 373-74 (11th Cir. 1995). The burden is on the employer to show that a waiver was knowing and voluntary when challenged by an employee. *Long*, 105 F.3d at 1539 (citing 29 U.S.C. § 626(f)(3)).

Here, the Court finds, as Plaintiff argues, that the information sought is not within Defendant's legitimate discovery needs nor is the information sought on central factual issues, therefore, the relative quality of information does not weigh in favor of compelling the deposition. The actual advice rendered by Plaintiff's counsel with regard to the release agreement has no bearing on whether Plaintiff was under duress and, therefore, involuntarily signed the release based on Defendant's suspension of his pay and health benefits during the consideration period.[4]

---

[4] Indeed, even if the information sought is relevant or likely to lead to the discovery of admissible evidence, it is not discoverable because it is privileged and Plaintiff has not waived the attorney-client privilege, expressly or impliedly. "The attorney-client privilege is waived for any relevant communication if the client asserts as a material issue in a proceeding that: ... the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct." *Livingstone*, *supra*, 91 F.3d at 537 (citing Restatement of the Law Governing Lawyers § 130(1) (Final Draft No. 1, 1996)). In *Livingstone*, plaintiff asserted that the release of her claims was not knowing and voluntary because she essentially did not appreciate the legal consequences of the release-dismissal agreement which the court construed as tantamount to a claim that her attorney did not give her accurate legal advice. *Livingstone*,

11

First, only one of many considerations in determining the existence of a knowing and voluntary release pursuant to the OWBPA is whether Defendant advised Plaintiff to consult counsel. *Long*, 105 F.3d at 1539. Indeed, based upon the facts presented herein, it is only relevant here that Defendant advised Plaintiff to seek counsel, as it is statutorily required to do, thus, the actual advice received by Plaintiff has no bearing on the knowing and voluntariness of the waiver pursuant to the OWBPA. *See, e.g., Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F. Supp. 2d 488, 492-493 (D. Md. 2002)(the court in analyzing the knowing and voluntariness of the ADEA waiver considered that plaintiff consulted an attorney, not any advice given by the attorney, in plaintiff's claim of duress in signing the release agreement). Similarly, with regard to Plaintiff's claim that he signed the agreement under duress, the fact that

---

91 F.3d at 537. However, the court did not indicate, contrary to Defendant's assertion, that plaintiff waived the attorney-client privilege **because** the advice is an important element of the voluntary analysis. Instead, the Court stated that plaintiff had effectively asserted that the advice provided by her attorney was relevant to the legal significance of her conduct and, therefore, upheld the district court's finding that the privilege was waived. *Id.* Thus, the fact that a plaintiff receives advice from counsel is important in the voluntariness analysis. Id. However, the plaintiff in *Livingstone* waived the attorney-client privilege because she placed the communications at issue not because the actual communications with counsel would always be important in determining voluntariness. Therefore, while receiving advice from counsel will be an important consideration in the voluntariness analysis, it will not always follow that the actual communication between the client and the attorney will be waived or at issue simply by challenging the validity of a release agreement on said grounds.
   Here, Plaintiff has not waived the attorney-client privilege because he has not asserted as a material issue the advice of his lawyer nor has he asserted that the advice is otherwise relevant to the legal significance of his conduct. Indeed, Plaintiff does not indicate that he did not understand the significance of signing the waiver. Instead, Plaintiff asserts that he did not voluntarily sign the agreement because of an action taken by Defendant which made him feel compelled to sign the agreement. Accordingly, the Court finds that Plaintiff has not waived the attorney-client privilege.

Plaintiff consulted counsel, not the advice rendered by Plaintiff's counsel, is the relevant consideration. *See Clermont v. Brown,* No. 08-4257, 2009 WL 5205422, at *4 (D.N.J. 2009)(noting that the opportunity to **consult** counsel prior to signing an agreement vitiates a duress defense)(emphasis added). Thus, based upon the facts presented here, the actual advice rendered has no bearing on Plaintiff's claim of duress.

Second, Defendant's legitimate need for the discovery sought is further diminished because Plaintiff's claims of involuntariness and duress do not focus on the contents of the release, its legal effect, or the legal advice received. Plaintiff's claim of involuntariness based upon duress does not bear on what his attorney did or did not advise but instead focuses on an affirmative action taken by Defendant and Plaintiff's state of mind as a result of that action. Thus, a central issue in this case, relating to the enforceability of the release, is whether Plaintiff was under economic duress, namely, that Plaintiff was the victim of a wrongful or unlawful act on the part of Defendant which deprived Plaintiff "of his unfettered will" and caused him to sign the release agreement. *See* April 25, 2011 Order ¶ 5 (outlining elements of economic duress)*; see also Continental Bank of Pa. v. Barclay Riding Academy, Inc.*, 93 N.J. 153, 176 (1983)(same). Plaintiff's communications with his attorney would not bear on this issue because despite what Plaintiff's attorney advised, Plaintiff

13

claims it was the pressure flowing from Defendant's action which caused him to sign the release to ensure his benefits would be reinstated. Indeed, while this Court has no opinion on the viability of Plaintiff's claim for economic duress, the mere fact that Plaintiff consulted with counsel, not the actual advice received, is pertinent to whether the duress defense could be vitiated. *See Harsco Corp.*, 779 F. 2d at 911-12. Based on these facts, an order compelling the deposition of Plaintiff's counsel with regard to her communications with Plaintiff is not proportional to the overall posture of this case.

However, the Court does find certain factual circumstances surrounding the relationship between Plaintiff and his attorney relevant. For example, the fact that Plaintiff actually consulted with counsel, when Plaintiff consulted with counsel and how many times are relevant to show that Plaintiff was counseled on the agreement and, therefore, are relevant to the knowing and voluntariness of his actions. Notwithstanding this recognition, the Court notes that some, if not all, of this information is already known to Defendant. (*See* Def.'s Br. 3-4; Exh. B.) Thus, there would be no compelling reason to depose Plaintiff's counsel on these matters either.

Accordingly, the first prong of the *Johnston* test weighs heavily against granting the motion to compel because the information sought via the deposition of Plaintiff's counsel would

14

not bear on central factual issues in this case and, in any event, the information sought is privileged, therefore, the deposition of Plaintiff's counsel is disproportionate to Defendant's legitimate discovery needs.

## 2. AVAILABILITY OF OTHER SOURCES AND HARM TO PLAINTIFF'S REPRESENTATIONAL RIGHTS

Having concluded that the proportionality prong of the *Johnston* test weighs heavily against granting the Motion to Compel, the Court will not engage in an exhaustive analysis regarding the remaining two prongs. It is noted that while there are no less intrusive sources for the specific information sought as only Plaintiff and his attorney have knowledge of their privileged conversations, this point is really irrelevant based upon the above referenced analysis in that the Court has found that the conversations and/or advice will have no bearing upon any central issue in this case. However, as Plaintiff notes and the Court agrees, Defendant is free to explore with Plaintiff the facts surrounding his contentions that the release was signed under duress and, therefore, was not voluntary.

Furthermore, the Court finds that there would be harm to Plaintiff's representational rights. Here, Defendant wants the deposition of Plaintiff's counsel to expressly intrude upon attorney-client communications. Thus, not only would there be grounds to have Plaintiff's counsel disqualified, the advice

15

Plaintiff sought in trying to comprehend the legal implications of signing the agreement would no longer be protected.  The Court finds this harmful result wholly unnecessary because the quality and relevance of the information sought, as discussed in detail above, is certainly not crucial to defending against Plaintiff's claims and, therefore, does not justify such an intrusion upon the attorney-client relationship.  Therefore, the harm to Plaintiff's representational rights far outweigh the deposition sought.[5]  The second and third prongs weigh against compelling the deposition of Plaintiff's counsel.

**CONCLUSION**

Based upon the facts before the Court and in consideration of the above referenced factors, the Court finds that an order compelling the deposition of Plaintiff's counsel would constitute an undue burden and oppression.  Therefore, Defendant's Motion to Compel is **DENIED**.

Dated:   3/6/12            s/ Karen M. Williams
                           KAREN M. WILLIAMS
                           UNITED STATES MAGISTRATE JUDGE

cc: Hon. Joseph E. Irenas

---

[5] Moreover, Plaintiff's retention of a second attorney is not dispositive on this issue.  It is clear that the Notice of Appearance entered by Plaintiff's second attorney was reactionary to Defendant's filing of the Motion to Compel the deposition of his first attorney.

16